*241 OPINION.
Smith:
The principal issue in these proceedings is whether the petitioner may deduct from gross .income in the tax years involved *242 amounts paid for additional machinery and equipment to maintain the normal output of its mines. This issue is decided in favor of the petitioner, upon the authority of United States v. Roden Coal Co., 39 Fed. (2d) 425; Marsh Fork Coal Co. v. Lucas, 42 Fed. (2d) 83; Commissioner of Internal Revenue v. Brier Hill Collieries, 50 Fed. (2d) 777, inconsistent with or reversing decisions of the Board which held that such expenditures were not deductible from gross income as ordinary and necessary expenses. In view of the above cited cases, the decision of the Board in Union Collieries Co., 3 B. T. A. 540, and numerous other cases denying the deduction of such items, will not be followed in the future.
This disposition of the claimed deductions for additional items of machinery and equipment necessarily changes the computations of invested capital. Other questions relating to invested capital may be shortly disposed of. They are:
(1) Whether the full value of the coal lands and other physical property and the receivables and the amount of cash acquired by the petitioner for stock in 1912 are to be included as part of the petitioner’s invested capital for 1917, 1918, and 1920;
(2) Whether the petitioner’s invested capital for 1918 and 1920 should be reduced by allowances for depletion or depreciation alleged to have been sustained in prior years; and
(3) Whether the petitioner’s invested capital for 1918 and 1920 should be reduced by amounts in respect of taxes for prior years.
In addition, the facts of record raise two other issues which must be determined before there can be a recomputation of the deficiencies involved.
(4) Whether the reduction of the petitioner’s outstanding stock in 1915 had any effect upon its invested capital for 1917, 1918, and 1920; and
(5) Whether the dividends paid by the petitioner in 1920 had any effect upon its invested capital for that year.
The last two points will be disposed of first. The reduction of the petitioner’s outstanding stock in 1915 from $1,500,000 to $1,000,000 did not operate to reduce the allowable invested capital. Cf. Penn Chemical Works, 7 B. T. A. 442; Arizona Commercial Mining Co. v. Casey, 32 Fed. (2d) 388.
Whether the dividends paid in 1920 affected the invested capital for 1920 depends upon the question as to whether the earnings of the company up to the date of each dividend payment had served to wipe out the operating deficit and to equal the dividend payment. Willcuts v. Milton Dairy Co., 275 U. S. 215. For 1920 the respondent found an invested capital of $1,092,373.63. Petitioner contends that the invested capital should be $1,319,262.20, the same as for *243 1818. It admits, however, that the determination of this question depends upon whether the petitioner had a sufficient surplus available for the payment of the dividends at the time they were paid in 1920. Whether there was a sufficient surplus will be determined on the recomputation made in conformity with this opinion.
In the computation of the deficiency for 1917, the respondent has used an invested capital of $1,000,000, which represented the par value of the stock outstanding at January 1, 1917. Counsel have stipulated that the assets acquired by the petitioner in exchange for its capital stock in 1912, had a cash value at the date of acquirement as follows:
Coal lands and other physical property_$2,201,139. 00
Receivables_ 78, 533.05
Cash_ 93, 619.16
Total assets acquired- 2,373,291.21
Less:
Total liability assumed_ 1, 054, 029. 01
Original paid-in capital_ 1, 319, 262.20
The stipulation further shows that the actual cash value of the coal lands and other physical property acquired as above on January 1,1914, was $2,170,064.42. The petitioner contends that the invested capital for 1917 is to be based upon the full value as of January 1, 1914, of the physical property and receivables acquired by the petitioner on May 1, 1912, together with the amount of cash then acquired (the company having no earned surplus but instead an operating deficit), which amount is found to be $1,288,187.62. The contention of the petitioner is sustained upon the authority of West End Consolidated Mining Co., 3 B. T. A. 128.
For 1918 the respondent computed an invested capital of $1,018,-812.06. The petitioner had no earned surplus at the beginning of the year. It contends that the paid-in capital should not be reduced by allowances for depletion or depreciation alleged to have been sustained in prior years, nor by amounts in respect of taxes for prior years, nor by the fact that its capital stock outstanding was reduced by from $1,500,000 to $1,000,000 in 1915, there being in that year no distribution of assets or earnings to its stockholders. The Board has repeatedly distinguished between earned surplus and paid-in capital and surplus for invested capital purposes. Thus, paid-in capital or surplus is not reduced by an operating deficit. Kenny Brothers Co., 1 B. T. A. 1019; Guarantee Construction Co., 2 B. T. A. 1145; Simmons Co., 8 B. T. A. 631; Archibald Sherrod, 16 B. T. A. 622. The contention of the petitioner upon this point must be sustained. In Carbo Petroleum Co., 12 B. T. A. 166, the Board stated:
*244 * * * There is no distinction, in so far as concerns invested capital, between impairment resulting from an operating deficit and impairment resulting from depletion where adequate provision has not been made therefor. If the depletion actually sustained is not charged against surplus, to that extent there is no true earned surplus. * * *
In the same opinion we stated at page 115:
* * * The amount originally invested is not involved here. When the mine is purchased the investment ordinarily represents paid-in capital which is not reduced by depletion and which amount remains in invested capital unless and until withdrawn in whole or in part by the stockholders in the way of dividends or otherwise. * * *
The parties have stipulated that at January 1, 1917, the petitioner had an accumulated operating deficit of $311,600.62. The net incomes, as found by the respondent for 1917 and 1918, were not sufficient to wipe out the operating deficit. The petitioner contends that the invested capital for 1918 should be $1,319,262.20, which as above shown, was the excess of the fair market value of the assets paid in to the corporation in 1912 for shares of stock over the liabilities assumed. The contentions of the petitioner with respect to the computation of invested capital for 1918 are sustained.
Reviewed by the Board.

Judgments will be entered, under Rule 50.